Good morning, Gerald Newkin on behalf of Appellant David Kim. I'm going to attempt to reserve five minutes, assuming that my eyesight is sufficient to focus on the clock at the right time. This is a case that in my view is an extremely close case factually. This is a case where there is absolutely no physical evidence connecting my client to the crime. This is a case where one would expect there to be blood splatter evidence and gunshot residue evidence connecting my client to the crime. Counsel, none of that with due respect. The issues raised in this appeal have absolutely nothing to do with what you just said. Well, I... I understand. I'm not going to talk about what you... I'm not going to talk about what you briefed. But I believe that it all is relevant because that gets down to whether or not these errors require the writ to be granted. I understand. But we're dealing with issues of law here and you've got certain things that you've raised in your brief. Okay. And I think you would be well advised to proceed with that. I want to start off on the failure to allow Rafael Perez to be called as a witness. Okay. Mr. Perez was represented by defense counsel to be the only expert that he knew that could offer the testimony sought by appellant down below. There was no challenge by the prosecution to the offer of proof made by defense counsel as to what Rafael Perez would say. One of the reasons there was no challenge to that evidence was because the prosecution provided the evidence to the defense and other proceedings for that offer of proof to be made. The defense was not allowed to call this defense expert to offer the testimony that was critical to the defense to refute the testimony of the prosecution's gang expert that had been strenuously objected to by defense counsel. And even though the trial court uttered the words, you can call any other expert you want, when defense counsel tried to act on those words by arguing or asking to be able to reopen cross-examination of the government gang expert to go into the areas that he wanted to establish through his gang expert that could not be called, the trial court said no. To that extent, it is clear that what happened in this case is that my client was denied his right to produce any evidence on issues critical to the testimony of the prosecution witnesses, and those prosecution witnesses were anything but inherently reliable witnesses. Mr. Newton, my understanding is that one of the things that Mr. Perez was going to testify was that gang members are afraid of police, and this was going to be based in part on his, on some of the experiences for which he was currently in prison. I understand that also to be part, that was part of the offer of proof, and I believe that was going to be part of the testimony that defense counsel wanted to elicit to explain why gang members would tell stories to police that favored the prosecution's case. And here's my question. Was there any evidence or any allegation in this case that there was police misconduct? There was absolutely no allegation with regard to that red herring argument first thrown out by the Court of Appeal in California. Mr. Perez was not called as a witness to testify that any witness in this case was threatened. Likewise, the gang expert was not called as a witness for the prosecution to testify that there had been any threats to prosecution witnesses. The prosecution gang expert was called to testify to bolster a reason to believe the prosecution witnesses, although this gang expert had never even talked to a member of the relevant gang in his career. Defense counsel wanted to produce the evidence of Perez solely as an expert witness. He never at any time claimed that there was any misconduct by the officers involved in the particular case, but that's totally irrelevant to the legal argument that's involved in this case. The reason the government wanted to call their gang expert is because their witnesses had been annihilated on cross-examination, and defense counsel told the judge, look, I don't want gang witnesses. I didn't want the prosecution to call a gang witness. I'm happy to submit this case without anybody calling a gang witness. I can live or die, and my client can live or die with the verdict that the jury's going to reach after watching these three or four individuals on the stand and what version of their statement the jury wants to accept. The prosecution couldn't live with that state of facts, and they called a witness to try to make these witnesses more credible. When the defense counsel said, okay, I want to call a witness that explains why that witness's testimony about the gang members being credible is bold, the court said, no, you cannot do that. We're not going to allow you the same courtesy that the prosecution had to try to bolster their case. You may not bolster your case that they're liars by calling your expert to testify that there are reasons why they're liars that has nothing to do with them being afraid of members of the gang or anything else. They're just liars. The bottom line, since we're dealing with the legal issue here, I gather you're contending that either that the California Penal Code 2621 is arbitrary on its face or that the judge applied it in an arbitrary and capricious manner. Is that your position? That is more likely a lead-in to my position. I believe that under the facts of this case, it's really irrelevant what that Penal Code section says. That is, in fact, what the judge relied upon to exclude Perez's testimony. Isn't that correct? Actually, I believe that not to be correct. Okay. What did he rely on? At no time did the court cite that Penal Code section. The court cited a case that talked about an inmate witness. Because Perez had been convicted, although he hadn't been sentenced, because obviously the prosecution wanted for them and a lot of other cases that were coming down the pike in Los Angeles, the judge said he was an inmate and said, therefore, I'm not going to let you call him. Let's say hypothetically. That's not what the Penal Code section talks about. Let's say hypothetically that the trial judge didn't mention it. The fact is 2621 says when the testimony of a material witness is required in a criminal action and such witness is a prisoner in a state prison, an order for the prisoner's temporary removal for such prison may be made by the Superior Court only upon showing that the testimony is material and necessary. And even then the granting of the order shall be in the discretion of said Superior Court or a judge thereof. So it seems like under the California Code that that really was a decision for the trial judge. As far as the trial judge was concerned, there's going to be an, in quotes, circus-like atmosphere in light of Mr. Perez's background. Are you saying that he was acting in an arbitrary and capricious manner in using that exclusion? Well, it's my belief that that exclusion didn't apply because Perez was not incarcerated outside of Los Angeles County and he wasn't in state prison. Putting all that aside, assume for the moment that that section applies. And I do not believe the section applies factually at all. Even if that section applied, under the facts of this case, one would hope that the Sixth Amendment right to compel a witness to testify on your behalf, when this is the only witness that you know about, would override, in my opinion, the outrageous reading of the California Penal Code section. I understand that different people may have different opinions about the Penal Code section. It doesn't matter for purposes of this habeas corpus proceeding whether or not that Penal Code section actually applied, which, in my mind, it's totally irrational to think that it did. But I understand different people can have different points of view. The United States Constitution, I had always hoped, trumps arbitrary state procedures. And in this instance, under the facts of this case, that was an arbitrary call by the trial court in direct violation of the United States Constitution. Counsel made it extremely clear to the trial judge that this is the only guy that I know of that can offer this testimony, and I'm making the offer of proof based upon 4,000 pages of discovery given to me by the prosecution because I'm representing other people in other cases where Perez is going to be a witness. I would almost bet you that at no time did any judge ever quash a subpoena assuming Perez was in state prison and the prosecution wanted him. Do you have any evidence of that, Counsel? I have no evidence of that because Perez wasn't in state prison at the time. He hadn't been sentenced. Counsel, you're here on Adipa Review. Correct. What's your Supreme Court authority for all of this? My Supreme Court authority is Chambers. Okay. Which holds what? Which holds that state evidentiary rulings cannot arbitrarily prevent the defendant from presenting his defense. And I believe that that applies right here. Here what happened is there's a state statute that arbitrarily prohibited Mr. Kim from presenting his defense by calling Perez as a witness. There are the South Carolina case, the same thing, where you couldn't introduce evidence challenging physical evidence. You cannot have a statute, Rock v. Arizona, the same thing. You cannot have a statute that arbitrarily eliminates the constitutional right to present a witness. What about Schaefer? Well, Schaefer is an interesting case because what Schaefer says is this evidence is inherently unreliable and nobody can produce the witness no matter what. In our case, the statute doesn't say nobody can produce the witness no matter what. In our case, the prosecution, under the facts of this case, got to call their expert that presented their point of view. Not only did they get to produce him, as I will get to subsequently, the defendant didn't get that. Mr. Kim didn't get to cross-examine that witness about what that witness had to testify about. So clearly under these facts, the Constitution trumps that statute. You're more concerned about the balance as opposed to whether Mr. Perez could testify in the first place, right? I believe absolutely that he could testify in the first place, and it was unquestionably a denial of his Sixth Amendment right to not allow that witness to be called under the facts of this case. So you're saying that if a defendant has a witness that's incarcerated, and that person, the defendant says, I need to have this witness testify, that under no circumstances can the trial judge exclude that witness as long as he's the only one that the person, the defendant has? What I'm saying is when that witness has evidence that is critical to the defense. In this particular case, though, counsel, if I understand it correctly, there was no evidence of police misconduct. Nothing to tie what the proffer suggested Perez was going to say. This was a hot-button former cop who was going to testify apparently in some way that was going to be highly inflammatory. The judge exercised his discretion based upon the law as the judge understood it to exclude his testimony. I don't understand that to be the case, Your Honor. I don't understand that what the defense wanted to do was introduce all this. What the defense wanted to do was call Perez, get a stipulation that Perez was a gang expert, and have him testify that there are reasons that gang members tell stories to the police. Let's deal with the real facts here. Wasn't Mr. Perez a former policeman? Yes. Okay, and wasn't he convicted of corruption? I believe that to be true. Okay, and he worked with gangs. Didn't his trial involve an enormous amount of publicity and an enormous amount of television? I think actually that he may have entered a plea in his case, Your Honor. And the prosecution then generated a whole lot of publicity about him because they wanted to toot their horn about him, and then they generate publicity so Mr. Kim then cannot call the witness in his trial because it would be a circus because the prosecution had created the circus by tooting their horn about getting Perez, and Perez entering a guilty plea, and Perez going to testify about other officers. Whether or not that's true, counsel, it wasn't this prosecutor that prosecuted Perez, was it? No. So somebody else did. That's correct. If they did it, they did it. But Santabella says it doesn't matter. The reality is that Mr. Perez, his testimony would undoubtedly have brought a lot of, what shall I say, new involvement of media and others into the trial that would have changed the whole dynamic of the thing, or at least potentially so. Well, I don't think, there's a lot of courtrooms in Los Angeles County, and there's not a lot of reporters hanging out in a lot of courtrooms in Los Angeles County. And certainly the way this case was tried, defense counsel wasn't calling reporters to show up in the courtroom to do something. My point is simply, counsel. Is that possible? It is possible that media could have come. However, it's also possible that Perez could have testified given his testimony. The question was whether or not the prosecution wanted to elicit most of this as the underlying basis for Perez's expert opinion. They had the choice whether to go into this. It didn't, all defense counsel needed to do was call Perez, establish that he was an expert, and ask him if there were reasons for gang members lying to police other than the fact that they were afraid of other gang members. But again, I'm trying to get an understanding here of what the trial judge was looking at. That's what we look at as a kind of appeal, is to determine whether the trial judge acted arbitrarily based upon the facts. And under these facts, where there had been a large, large legal fight about whether or not the prosecution should be able to call this expert, that was resolved very quickly without any concern about anything. The prosecution was allowed to call their expert. When the defense wanted to call the only expert they knew that could offer that testimony, after the prosecution had already been allowed to do so, the judge needed to look at the case in a different way. And under these facts, and the cases cited in the brief, he clearly abused the Sixth Amendment in saying that you cannot call this witness. And he clearly abused the Sixth Amendment when he would not allow cross-examination to be reopened on the government. And do you have any Supreme Court cases that state that? Well, I certainly think that Davis says that, that you can cross-examine witnesses with regard to bias, and that case was 30 years old at the time this case was going. And you think that's applicable in this instance? I think that that case is applicable in this instance, absolutely. I'll give you a little extra time if I consume too much of your time. I do need clarification of something that you said. You told us just a minute ago that Mr. Kim did not get a chance to cross-examine Sergeant Yacobian. And I had understood you earlier to say that you, that Kim did not, Kim wanted to recall Sergeant Yacobian for the purposes of cross-examining him. Can you explain that? No, what he wanted to, Kim was allowed some cross-examination of the gang expert. When Sergeant Yacobian was put on the stand. He was allowed some cross-examination. The court refused to allow questions in some areas that defense counsel ultimately called Perez to go into, such as whether or not gang members are afraid of the police, whether or not police lie, several of those areas he asked to go into. He was told he could not go into them. After the trial judge said you may not call Perez as a witness, you may call any other expert you want, defense counsel then said to the judge, Your Honor, I would like you to revisit your earlier rulings about the extent of my cross-examination, and I would like then to be able to ask these questions of the prosecution expert. And the judge said, No, the rulings stand. Okay. Thank you, counsel. Good morning. Colleen Seidman, Deputy Attorney General for the appellee. I'd like to first talk about the cross-examination of Sergeant Yacobian. The testimony that defense counsel wanted to elicit and that counsel here has talked about was the reason why gang members may be afraid of the police. And counsel has made a lot about this argument that defense was not allowed to ask Sergeant Yacobian about that. That goes to his claim that he was denied his right to confront this witness. In actuality, he did ask that question of this witness of Sergeant Yacobian. Although the trial court initially sustained an objection to that line of questioning, the defense counsel later went on to ask the same question again and specifically asked Sergeant Yacobian why gang members are afraid of the police. And Sergeant Yacobian gave a response to that question. He told them they're afraid of the police because they're afraid of, and I'm looking at the transcript, page number 5835, there may be a concern of the officers uncovering activities that the individual may have been involved in and inadvertently saying something and they give up one of their fellow gang members and bringing down retribution to themselves, as I discussed earlier. So there was no issue with regard to the confrontation clause in this case. Counsel asked the question and got an answer. So that claim really has no... Well, the answer is they fear the police because the police may discover they've committed some crimes. Correct. I gather the testimony that he would want to put on from his own gang expert would be they're afraid of the police because the police sometimes frame people. Correct. He didn't get the answer he wanted from this expert, but he did ask the question. I understand that that may satisfy his right to cross-examine. Correct. But it still leaves open, I guess, whether he's entitled to call his own gang expert. And that goes to the first argument that counsel made. The defendant was not denied his right to present a defense. He was prevented from calling a particular witness as an expert, and I am not aware of any United States Supreme Court case that gives a defendant the right to call a particular expert by name. Now, if we go with the argument that counsel has made, then all defendant would ever need to do is represent to the court, this one individual is the only person available who I think can testify on this issue. And I think that that creates a problem for the courts because in any case involving any gang crime, a defendant can simply say Rafael Perez is the only expert that is available on this issue. And that does create a lot of problems, particularly in this case when there was no allegation that there was any police corruption or violence against any of the gang members. The court specifically told defense counsel, and again, I'm quoting, this is from ER page 23, what I'm not doing, I want to be clear, I'm not denying you the right to call a gang expert. I'm quashing the subpoena for Rafael Perez. Later on, the court says on the same page, I will allow you to call any gang expert that's currently a member or formerly a member who is not an inmate of the notoriety of Rafael Perez to present the testimony that you have proffered. The court specifically said I will allow you to call anyone else to testify on these subjects. The court did not prevent the defendant from offering this testimony or prevent it from calling a gang expert at trial. Is notoriety a good reason for not letting somebody call a witness? I mean, you know. I think in this case when you're dealing with this person who has admitted to committing perjury, is a convicted felon, I think that becomes an issue. And I think that it does become an issue. That doesn't go to notoriety. That goes to the fact that he's impeachable. That's true. But when you look at the notoriety of it, you do look at the fact that it could create a circus-like atmosphere. These jurors most likely knew who Rafael Perez was, knew what was going on. Again, there was a lot of media coverage in that case. And that could and I think would have confused a lot of the issues in this case, confused the jurors, got them to focus on something that was not at all relevant in this particular case. And again, I just think it's very, very important to emphasize the fact that the trial court did not prevent the defendant in this case from calling an expert. The trial court quashed a subpoena for a particular witness in this case and specifically told the defense, you can call anyone else as an expert to testify. Was there any evidence that Mr. Perez knew, had experience with the gangs at issue here? That, I don't believe I saw that in the record. I'm not clear on that. But I don't know if there's any information or any testimony or evidence offered that he was familiar with these two particular gangs. Any explanation as to why the defense counsel couldn't have found another expert? No. He simply said, my understanding is that this is the only person who can testify on these issues. And the trial court, you know, in its discretion, did not agree with that. In its discretion said, no, I don't believe that. There are other experts. You can find someone if you need to find someone. And the defense didn't. Did the trial court give the defense time to find another expert? Or did they just move forward with the trial at that point? That, I'm not aware of if there was a particular time. Was there a motion for a continuance? I'm sorry? Was there a motion for a continuance? Not that I'm aware of, no. And I'll briefly touch on the issue of the Sergeant Jacobian's testimony, allegedly testimony regarding the credibility of these gang experts. Sergeant Jacobian did not offer any testimony about the credibility of these witnesses who testified. He offered testimony regarding the sociology, the psychology of the gangs, what gang members may do. Sounds pretty close, though, doesn't it? He says gang members wouldn't lie and inculpate one of their own members in preference to inculpating a member of a different gang. I mean, isn't that essentially saying under the circumstances here, these guys are telling the truth? Well, what he said was that in the society of these gangs, these members have a fear of retaliation. They have a fear of retaliation from members of their own gang. They're not going to implicate a member of their own gang to save someone or to avoid blaming a member of another gang. Given the culture of the gangs and, again, the retaliation, what these gang members face if they cooperate with the police, if they give evidence against members of their own gang, they face being beaten, killed, a number of very violent crimes. This type of evidence is evidence that this court has found to be relevant. Well, you see, when it's usually used, you've got a gang expert who's explaining why some witness isn't testifying. They say, well, you know, there's fear of retaliation from members if you rat on one of your own gang members. And that's why some witness isn't here. And that's the way we've looked at these in most of the cases that I think that are cited. Here we have somebody saying, well, these guys are testifying against one of their own gang. And that's so contrary to gang culture that they wouldn't be doing it if it wasn't truthful. Well, I mean, that's certainly the implication to be drawn from the testimony. That's the analysis, but that's not what the expert said. The expert didn't say these guys must be telling the truth because it's uncommon for gang members to testify against members of their own gang. What he testified, what he said was that due to the fear of retaliation, they're not likely going to testify against members of their own gang to prevent, you know, prosecution or arrest of a member. Of course they have. I'm sorry? But of course they have. They just testified. Right. But what I'm saying is he didn't vouch for their credibility. He didn't take that leap. That was something for the jury to consider. His testimony helped the jurors, you know, analyze the testimony that was given by these members. But he in no way vouched for their credibility. I would expect many jurors probably to figure that it is unusual for members of a gang to testify against their own people and that that might lend weight to their testimony. I wouldn't be surprised at that. I just don't know how far the expert can go in saying that. And I guess my point is that he didn't go that far. He didn't make that extra, you know, leap to say, you know, and therefore their testimony is credible. Mr. Newton argues that there's a constitutional dimension to the imbalance between the experts. On the one hand, Dukoubian was allowed to testify for the prosecution to perhaps vouch, if you follow Judge Canby's line of thinking on that. And yet at the same time, the defense's star witness to try to undercut what was said was denied. Are you aware of any constitutional case, any U.S. Supreme Court case that deals with this issue? And if so, how? This issue of balancing. The witnesses, such as in this case. He cites the Davis case, I think he said. Are you familiar with that case? Not off the top of my head, I apologize. Are you familiar with any case that the Supreme Court has decided that would bear on this issue, whether denying one side its expert when permitting the other side its expert under the circumstances of this case? Well, I mean, I think Schaefer touches on that. And Schaefer gives the trial court, you know, broad discretion to exclude certain evidence from criminal trials. That's an arbitrariness standard under Schaefer, right? Yes. Yes. And so I think we need to look at whether or not, you know, these two experts, you know, was Perez an arbitrary witness? Was he someone that was necessary? Was his testimony relevant? And I think no. I think that there were other experts that could have been called and could have elicited, the defense could have elicited the same type of testimony that he was seeking from Perez from a different expert. And I think that's the key point here. Mr. Newton says that California Penal Code 2621 was not used by the trial judge as the basis for excluding Perez. Do you know anything to the contrary in the record? Well, you know, the trial court didn't specifically reference that section, but the trial court made a point of saying, and again, I'm looking at ER 23, he is an inmate witness, and then he goes on to talk about his notoriety. I think in pointing that out, the court was referring to that statute, saying he's an inmate witness, there are problems that can arise in calling these type of witnesses. And under that statute, he certainly had the discretion not to call or not to allow that witness to testify. And I don't think there's anything in the record that establishes that the trial court was not referring to that or the trial court was specifically saying, you know, this statute has nothing to do with this. The fact that he referenced him as an inmate witness, I think, refers to this statute. Would there be any other basis that the judge could have excluded Mr. Perez as a witness other than 2621, to which the judge could have been referring or just assumed applied? Well, I think under Schaefer, he could have excluded him, obviously. As a constitutional matter. As a constitutional matter, but as, you know, a procedural or as a statutory matter. I'm not aware of anything else he could have been referring to when he made that statement. Thank you. Thank you. Mr. Newton. After the passage quoted by counsel on page 6021 of the reporter's transcript, counsel for Mr. Kim said, just one other point, Your Honor, if I can just go back for a second. If we can call any witness we want to testify to the very issues that I raised other than Rafael Perez, why am I precluded from cross-examining this witness on these issues? The court. You are precluded. Well, I'm not going to go over any rulings I made, and I made that last week. Defense counsel. I'm asking now for permission to be relieved of the court's ruling regarding questioning this witness concerning the issues that I brought up before. The court. Denied for the reasons I stated previously. Defense counsel not only wanted to call Perez as the witness to testify about what gangs, why gangs are afraid of the police. He right there said, Judge, I want to be able to go in and ask the questions that I couldn't ask. Yes, counsel is correct. He was able to ask one general question. He was not allowed to follow up with any questions. He was not allowed to ask specific questions that you're allowed to ask on cross-examination as to why gang members would lie. He didn't get to go in. He had a preliminary question to the area, and that's all he was allowed to ask. But he was allowed to ask the question he was going to put to Perez, right? No. He was allowed to ask only the one question that the officer dodged on the answer, and he wasn't allowed to follow up questions. He was not allowed to ask about the gang members, whether or not police threatened gang members, whether or not police lie about gang members. But you told me in your opening argument that there was no basis for that. There were no allegations here that the police had threatened gang members or any police misconduct. You're absolutely correct, and that's a complete red herring. The whole point of this question is the government called a witness to say, these gang members are really telling the truth because, in my opinion, blah, blah, blah, blah. The defense counsel sought to counter that opinion by saying there are other reasons that would influence these gang members to not be telling the truth when they talk to the prosecution. It has nothing to do with who knew what about the facts of these officers in this case. Certainly the prosecution gang expert knew nothing about what the officers did in this case. The defense was never alleging that the officers in this case did anything. What he was saying is the gang member state of mind is such that when they are interrogated by the police, they are afraid of the police and they will lie to the police because they're afraid and they want to say what the police want them to say. That is the sum and substance of the expert testimony that was sought by the defense. That completely countered the testimony that the prosecution was allowed to give over a lot of objections. And there wasn't any gang expert in the country other than Rafael Perez who could have said that. Well, there were two that the defense tried to call in actuality. He tried to call Rafael Perez and they said you can't even call him, and he tried to recall Jacobian to go into cross-examination that the judge had previously said no, and the judge said no again. So I don't know if there was another expert that could be called, but defense counsel had struck out twice on two of them. And the court never said, by the way, and the defense counsel didn't ask, they never said, well, we'll adjourn the trial for a week for you to find somebody. That was never, ever offered. So I think that it is extremely misleading to say that this ruling was based on the fact that you can't only call this witness. The judge didn't want to go into this area of inquiry. He didn't want the jury to hear that there were other reasons why the gang members might lie. If they were really afraid of that, they could have limited the questions that were asked by Perez. The prosecution didn't have to go into all the underlying reasons for Perez's opinion. They didn't want to be stuck with his opinion because they knew that they would get a not guilty verdict if it happened. And that's what this case is all about. Thank you, counsel. Thank you. We thank both counsel for the argument. Kim versus Adams is submitted. Our final case on the oral argument calendar is United States versus Izunza and Zaket. I have no idea whether I pronounced that name correctly, so we'll invite correction on that point. Thank you.
judges: Canby, Bybee, M. Smith